### WESTINGHOUSE AIR-BRAKE CO. v. NEW YORK AIR-BRAKE CO.

(Circuit Court, S. D. New York. December 27, 1894.)

1. PATENTS—CONSTRUCTION OF CLAIMS—AIR BRAKE.

The inventions covered by the Westinghouse patents Nos. 360,070 and 376,837, for improvements in railroad air brakes, are both broad ones, and the claims are entitled to a liberal construction.

2. SAME—INFRINGEMENT.

In an air-brake patent, the claim covered the combination of a main air pipe, an auxiliary reservoir, a brake cylinder, a triple valve, and "an auxiliary valve device, actuated by the piston of the triple valve, substantially as set forth"; and the patent showed a construction in which the auxiliary valve device is actuated by direct impingement of the triple

[1] Pratt v. Lloyd, 65 Fed. 800.

valve upon its stem. *Held,* the invention being a broad one, that the claim also covered a construction in which the triple valve acts upon the auxiliary valve, not directly, but by opening a port which reduces pressure on one side of another piston in a supplementary chamber, thereby causing such piston to open said valve.

3. SAME.

In an air-brake patent a claim which includes, as an element of the combination, a piston "actuated by pressure from an auxiliary reservoir," so as to impart opening movement to the valve controlling communication between the brake cylinder and the brake pipe, is infringed by a construction in which said piston is actuated, not by pressure from the auxiliary reservoir proper, but from a separate chamber, which is charged from the train pipe in the same manner as the auxiliary reservoir.

4. SAME.

The Westinghouse air-brake patents Nos. 360,070 and 376,837 construed, on motion for preliminary injunction, and claims 1, 2, and 4 of the former, and claim 1 of the latter, held infringed.

This was a bill by the Westinghouse Air-Brake Company against the New York Air-Brake Company for infringement of patent. Complainant moved for a preliminary injunction.

Leonard E. Curtis, Frederic H. Betts, and Geo. H. Christy, for complainant.

J. E. Maynadier and F. P. Fish, for defendant.

LACOMBE, Circuit Judge. This is an application for a preliminary injunction under three patents, viz.: No. 360,070, March 29, 1887, to George Westinghouse, Jr.; No. 376,837, January 24, 1888, to the same; and No. 393,784, December 4, 1888, to Harvey S. Park. It is unnecessary to enter into any elaborate statement of the history of the art, and of the impress left upon it by these inventions. That entire subject has been discussed with great care and set forth at great length in the former opinions of this court and of the court of appeals delivered in the earlier actions between these same parties. 59 Fed. 581; 63 Fed. 962. In those opinions it is held that the two patents 360,070 and 376,837 disclosed, the one the emergency valve, the other the supplemental piston or special motor, which, so far as the art has now progressed, appear to be both essential to the structure of a successful quick-action air brake. Both of these inventions achieved great necessities and overcame great hindrances; each is an indispensable part of the "bridge which carried railroad-car builders from failure to success"; both were products of the inventive genius of the same man; nothing anticipating either is shown; and the defense of the defendant in the former action and in this may truthfully be described in terms of another art,—by bringing the two patents into juxtaposition they seek to short-circuit the claims, and thus dissipate the invention. This attempt failed in the former suit, wherein No. 376,837, the patent sued upon, was held to be one of wide breadth; one as to which "a court would not be justified in adopting a narrow or astute construction which should minimize the character of the invention, leave its real scope open to trespassers, and thus be fatal to the grant." Wherefore the court of appeals held it to be entitled to a liberal construction, with a wide range of equivalents. Although No. 360,070 was not declared upon in the

earlier suit, it was discussed at great length, and its meritoriousness was clearly recognized. The statements of the problem to be solved as it stood prior to January, 1888, and of the contribution of 360,070 to that solution, as they are set forth in the opinions above cited, leave no doubt that both the circuit court and the court of appeals regarded it as a patent of wide breadth; the only difficulty being to find sufficient standing room within the field it occupied to permit of according to 376,837 also the necessary breadth of construction to cover the infringing devices then before the court, and thus save to a meritorious inventor the fruits of his novel and most useful invention.

Defendant relies upon the rejection by the patent office of the original first claim of 360,070, and the substitution of the present first claim as an abandonment of the fundamental broad invention therein disclosed. When, however, the reference on which the patent office rejected the original first claim (Boyden's patent, No. 280,285) is consulted, it is apparent that the essential change in the claim is the phrase used to differentiate 360,070, an invention to be used "in the application of the brake," from Boyden's invention, whose object was to provide for replenishing, "while the brake is on," the air reservoir or brake cylinder, when the pressure is reduced by leakage, etc. There is nothing in the file wrapper or contents to show that the patent office required or that the inventor agreed to abandon what was the great feature of his invention,—the emergency valve,—or to give up whatever range of equivalents his patent might, as modified, fairly cover. Both these patents 360,070 and 376,837 are broad ones, and their claims should be construed to cover the meritorious invention they disclose, unless the language of such claims precludes such a construction. The only question really open on this motion is that of infringement.

### Patent No. 360,070.

The first claim of this patent is as follows:

"(1) In a brake mechanism, the combination of a main air pipe, an auxiliary reservoir, a brake cylinder, a triple valve, and an auxiliary valve device, actuated by the piston of the triple valve and independent of the main valve thereof, for admitting air in the application of the brake directly from the main air pipe to the brake cylinder, substantially as set forth."

Defendant's device has the main air pipe, an auxiliary reservoir, a brake cylinder, a triple valve, and an auxiliary valve device, independent of the main valve, for admitting air in the application of the brake directly from the main air pipe to the brake cylinder. The means for actuating the auxiliary valve device is stated in the claim to be "the piston of the triple valve"; and the way in which it acts, as shown in the patent, is by direct impingement upon the stem of the auxiliary valve device. In defendant's structure the piston of the triple valve acts upon the auxiliary valve device, not directly, but by opening a port, which reduces pressure on one side of another piston in a supplementary chamber, the movement of such supplementary piston opening the emergency valve. None the less is the auxiliary valve device "actuated" by the piston of the triple

valve, though two pistons do the work of one, and the action of the triple-valve piston is indirect instead of direct. Such an addition to the mechanical details of the combination is within the doctrine of equivalents, when the original invention is a broad one, as this undoubtedly is, and the language of the claim fairly covers it, which is the case here; the word "actuated" being applicable equally to indirect and to direct actuation. Nor will it avail defendants, as against the claim of a broad patent, that the addition to the mechanism is itself an advance in the art,—an advance, it may be noted, which is not theirs, but one they have appropriated from a subsequent patent of the same inventor. The person who discovered the advantage of a supplemental motor for the emergency valve, and devised its mechanism, was, as the court of appeals has held, entitled to a broad patent for that highly meritorious invention, which was essential to complete success in the art; but that circumstance did not entitle him to appropriate the meritorious and equally essential emergency valve of the earlier patent, so long, at least, as he actuated his supplemental motor in the way in which such earlier patent claimed, viz. by the piston of the triple valve.

The second claim of No. 360,070 is as follows:

"(2) In a brake mechanism, the combination of a main air pipe, an auxiliary reservoir, a brake cylinder, and a triple valve having a piston whose preliminary traverse admits air from the auxiliary reservoir to the brake cylinder, and which by a further traverse admits air directly from the main air pipe to the brake cylinder, substantially as set forth."

The discussion of the first claim applies equally to this one. In the first claim, actuation by the piston of the triple valve was made an element. In this claim the inventor more closely limits the mode of such actuation. It is to be by a "further traverse" of that piston. The means shown in the patent is by direct impingement upon the stem of the emergency piston. The defendant avails of the "further traverse" to set in motion supplementary devices which act upon the emergency valve. Both these claims are infringed, as is also the fourth. The fifth, which has not been elaborated upon the argument, contains the additional element of a check valve, and the question of its infringement may be left for final hearing.

### Patent No. 376,837.

The first claim of this patent is as follows:

"(1) In a brake mechanism, the combination of a chamber or casing having direct connections to a brake cylinder and to a brake pipe, respectively, a valve controlling communication between said connections, and a piston or diaphragm which is independent of and unconnected with a triple-valve piston, and is actuated by pressure from an auxiliary reservoir in direction to impart opening movement to said valve, substantially as set forth."

This is the "supplemental chamber system first conceived and embodied by the patentee," an invention which the court of appeals has held to be a broad one, and entitled to a wide range of equivalents. When we speak of anything as actuated by air-pressure, the phrase necessarily implies movement in one direction or another, as the pressure is increased or diminished. Whether it is set from

rest into motion by applying pressure or by withdrawing it, the phrase "actuated by pressure" fairly describes the operation. The question whether defendant's present device infringes this claim, as did the two devices which were before the court in the former suit, is a narrow one. The claim of the patent is so fully discussed in the decision of the court of appeals that it will only be necessary to describe defendant's new device. The supplemental piston, Q, when at rest, is pressed upon from below by train-pipe pressure. It remains at rest because the space between its face and the inclosing walls of the chamber in which it moves is filled with air of like pressure, which reaches such space from the train pipe through two narrow conduits, p and u, and a connection, t. When the device is actuated upon the excess stroke of the triple-valve piston, the connection, t, is moved; the conduit, p, is, for an instant, closed, and then opened to the outer air. Thereupon the space above the piston is voided of compressed air, and the train-pipe pressure from below, being no longer counterbalanced by pressure in the chamber above, moves and unseats the valve. It is actuated therefore by the withdrawal of the air pressure from the chamber above, which, before it is thrown open to admit of such withdrawal, has been cut off from all connection with the train pipe. Pressure from the auxiliary reservoir at no time operates upon it either to hold it at rest or to put it in motion. Defendant contends that the claim of the patent must be restricted so as to cover only supplemental devices which are actuated by pressure from the auxiliary reservoir, and therefore that its present device does not infringe. The phrases "train-pipe pressure" and "auxiliary reservoir pressure" had, prior to the granting of this patent, acquired a well-known meaning in the art, and the use of one in a claim could hardly be construed to mean the other. But complainant contends that the phrase used in this claim to describe the means for imparting motion to the supplemental piston is not "actuated by auxiliary reservoir pressure," nor "actuated by pressure from the auxiliary reservoir," but "actuated by pressure from an auxiliary reservoir." If some one should reproduce every detail of the claim with the single exception of adding a separate and additional chamber or reservoir, which was charged from the auxiliary reservoir, and then cut off from it, and should use the force thus stored in that additional or supplementary chamber or reservoir for the sole purpose of imparting motion to the supplemental piston, his device would, within the ordinary use of words, contain the element of actuation "by pressure from an auxiliary reservoir," whether the additional chamber were contained as a subreservoir within the auxiliary reservoir proper, or were placed entirely outside of the latter. The charging of such additional reservoir, not from the auxiliary reservoir, but in the same way as the auxiliary reservoir itself is charged, viz. by admitting train-pipe pressure into it through a charging port, and then cutting off connection with the train pipe, does not seem to involve any substantial difference; and where the patent is a broad one, as this is, with a full range of equivalents, the maker of such a device may fairly be held an infringer. Whether the device of the defendant contains such an

additional auxiliary reservoir in the chamber, P, above the piston face, is the question in dispute. For the brief moment when, after being charged, it is cut off from the train pipe, it seems to be such, and the compressed air which it contains to be within a broad definition of "auxiliary reservoir pressure," viz. air compressed at the locomotive, and which, passing through the train pipe, has got beyond a charging port, which thereafter cuts off its connection with the source of supply, and detains it as stored-up pressure to be used in an emergency. In view of the broad construction given to 376,837 by the court of appeals, the defendant's device must be held to infringe this claim. Infringement of the third and fourth claims is not so clear, and those questions must be reserved for final hearing.

### Patent No. 393,784.

This is the patent to Park, which the court of appeals held to be a subordinate one, entitled to but a narrow construction. Infringement is doubtful, and the question had best be determined upon fuller testimony at final hearing.

Complainant may take an order for preliminary injunction in conformity with this opinion.