## ELEVATOR SUPPLIES CO., Inc., v. GRAHAM & NORTON CO.

### No. 4250.

Circuit Court of Appeals, Third Circuit.

Oct. 3, 1930.

Samuel E. Darby, Jr., of New York City, E. E. Berl, of Wilmington, Del., and Darby & Darby, of New York City, for appellant.

Virgil C. Kline, Clifton V. Edwards, and Henry C. Townsend, all of New York City, and Wm. G. Mahaffy, of Wilmington, Del., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and SCHOONMAKER, District Judge.

WOOLLEY, Circuit Judge.

The bill charged the defendant with infringing certain claims of Letters Patent No. 1,587,007 issued to Clifford Norton and others, and of Letters Patent No. 1,565,143 issued to Harold J. Fear. The defenses pleaded were invalidity and non-infringement but the case was tried on the issue of infringement within the scope of the claims. The court, having restricted the claims and having found the defendant had not infringed them, dismissed the bill. The plaintiff appealed.

The inventions of the patents in suit, like those of many prior patents, relate to mechanism for opening and closing elevator doors. Doors are of two kinds; door in the elevator shaftway at each floor of a building and the door on the elevator itself. In the rapid increase in the number and height of modern hotel and office buildings the use of elevators for both freight and passengers grew with corresponding rapidity. Elevator problems multiplied quickly and inventions to solve them soon crowded the art.

#### Norton Patent No. 1,587,007, Issued June 1, 1926.

Norton, recognizing that elevators had been provided with mechanism for operating shaftway doors by power which is so controlled that the door opening mechanism is thrown into operation when the car is stopped at any one of the floors, sought by the invention of his patent to improve and particularly to simplify the complicated mechanism theretofore used to do that thing. The invention of the patent, carefully stated in detail by the learned trial judge, 33 F.(2d) 148, and here roughly stated, is found in the disclosures of the specification rather than in the terms of the claims. It is by no means simple.

The invention is directed, and limited, to shaftway doors and is embodied in two lines for operating all doors and in means for operating one at a time by connecting the operating mechanism of any one of the doors with the lines, their members and connections. A motor at the top of the shaftway actuates an endless line (78) which extends downwardly close to the side of the shaftway from a pulley connected with the motor at the top to a pulley at the bottom. Between the endless line and the pathway of the car is another line (110) suspended from one end of a small walking beam whose other end is connected with and actuated by an electric coil (38) at the top. This line is held taut by a weight at the bottom. The circuit of the coil is interconnected with the car operating lever which when moved to shut off the hoisting power and stop the car deenergizes the coil which in turn releases the walking beam and allows the weight to pull down the line (110). On line 110 are toggles and

toggle connections opposite the floors. When the coil is deenergized and the weight pulls down line 110 it straightens out all the toggle levers opposite all floors. If this were all, nothing would happen. On the car, however, there is a fixed cam which in normal position is out of the path of the toggles and their connections before coil 38 is deenergized, striking none of them as it passes from floor to floor except when the car comes to rest at a particular floor. To stop the car the operator moves the lever which shuts off the hoisting power. This in turn deenergizes the coil with the effect that, as we have said, the walking beam tips and line 110 descends. When the weight pulls line 110 downwardly and otherwise the toggle opposite the car would straighten out, the car-connected cam will prevent one arm of that toggle from moving outward and so cause the toggle to move a lever (98) and thus disengage the latch at the upper end of the door and move hook 92 at the lower end to engage the under part of one of the many enlargements or obstructions (96) on the endless line 78. Simultaneously the stopping of the car also energizes the operating door motor 84 whereby the lower half of a horizontally split door —the one type mentioned in the patent and apparently the only type workable with the invention—is thrown downward and the upper half is thrown upward. Thus the door on that floor is opened and the doors on all other floors remain closed. This, it should be noted, is a train of automatic movements brought into play by the manual movement of the car lever.

The plaintiff says that this invention is a combination of five elements all of which may perhaps be old but that the combination is new. They are: (1) The elimination of all projecting parts with which the car, in its travel up and down the shaftway, might come in contact; (2) the automatic operation of the shaftway door opposite which the car is brought to rest by the mere action of opening the hoisting circuit; (3) the prevention of operation of the doors in the shaftway other than the one opposite which the car is stopped; (4) the interlocking of the door operation with the electrical system of the elevator control; (5) the provision of a single electro-magnetic instrumentality for operating all shaftway doors, eliminating the necessity of providing a separate electro-magnetic instrumentality for each door.

On this disclosure of mechanism to produce these results numerous claims were filed and allowed of which claim 15 is typical. It is as follows:

"An elevator mechanism having in combination a hatchway (shaftway), a series of doors for said hatchway, a car, car hoisting *means, means* for controlling the hoisting *means* to start and stop the car, *means* for operating the doors, a single electro-magnetic device, *means* controlled by said electro-magnetic device and *means* controlled by the car cooperating to cause the opening of the door at the floor at which the car is stopped while the other doors remain closed."

When this claim is laid on the device described in the specification, translating the word "means" as it appears in the claim into the mechanism disclosed in the specification, it will be observed that the claim reads precisely on the device there described. It also reads on the mechanism of the defendant's device which, we shall assume, has the same five essential elements of the invention before stated. This constitutes infringement if the various "means" of the claim are to be read as not particularly or substantially the means of the specification but any and all other means which may be employed to do those things and to produce those results. But to determine whether or not the defendant's device is truly an infringement it is not enough to read the word "means," iterated and reiterated in the claims, literally on its construction and ignore what the inventor meant by that word as disclosed by his specification. Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 510, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959. It must be determined that the device of the defendant is not merely in words but in fact the invention of the patent.

All the law on this question is stated in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 569, 18 S. Ct. 707, 722, 42 L. Ed. 1136. In that case Westinghouse sued the Boyden Company for infringement of his patent No. 360,070 for a fluid-pressure automatic brake mechanism. Boyden's device was in principle different from that of Westinghouse yet the claims of the Westinghouse patent read literally on it. Even so, the Supreme Court, affirming the Circuit Court of Appeals for the Fourth Circuit (70 F. 816) which reversed the Circuit Court (66 F. 997) for the District of Maryland finding the claims infringed, said (italics ours for emphasis):

"But, even if it be conceded that the Boyden device corresponds with the letter of

the Westinghouse claims, that does not settle conclusively the question of infringement. We have repeatedly held that a charge of infringement is sometimes made out, though the letter of the claims be avoided. [Union Paper Bag] Machine Co. v. Murphy, 97 U. S. 120 [24 L. Ed. 935]; Ives v. Hamilton, 92 U. S. 426, 431 [23 L. Ed. 494]; Morey v. Lockwood, 8 Wall. 230 [19 L. Ed. 339]; Elizabeth v. Pavement Company, 97 U. S. 126, 137 [24 L. Ed. 1000]; Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799 [36 L. Ed. 609]; Hoyt v. Horne, 145 U. S. 302, 12 S. Ct. 922 [36 L. Ed. 713]. *The converse is equally true.* The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent. 'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572 [17 L. Ed. 650], 'involves *substantial identity,* whether that identity be described by the terms, "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent." ' "

■■ We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, *the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means,* or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but *the substance of the invention must be there.* As was said in Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650, an infringement "is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * *That two machines produce the same effect, will not justify the assertion that they are substantially the same, or that the devices used by one are, therefore, mere equivalents for those of the other.*"

To the issue of infringement in Union Special Machine Co. v. Singer Mfg. Co. (C. C. A.) 227 F. 858, these rules were peculiarly applicable and decisive.

With this law before us we come to the defendant's alleged infringing installation, not merely with the word "means" in our mind but with our eyes on what Norton, in his specification, said is his invention.

The defendant's system is designed for high speed passenger elevators with horizontal sliding doors on both the shaftway and the car. (The invention of the patent has been used only once and then on a freight elevator in connection with shaftway doors split horizontally in the middle whose two halves slid vertically in opposite directions.) The shaftway doors in the defendant's system are operated by separate pneumatic motors, one at each landing. Each shaftway door motor is controlled by a bell crank lever. One arm connects with the motor and another arm projects into the shaftway. The latter is adapted to be engaged by a car-carried cam, similar to that of Norton and the prior art, when, and only when, the operator brings the car to rest and, by the same action, the cam (unlike Norton's) comes into a projected position. This cam is normally held in retracted position by an energized torque motor or cam motor (5). This motor is energized and deenergized when the hoisting motor is energized and deenergized. This is effected by a relay (c). When the cam motor is energized it withdraws the cam, and when the hoisting motor is deenergized to stop the car the cam motor is deenergized also and the spring behind the cam projects it against the projecting arm of the bell crank lever of the door motor at the floor at which the car is stopped, thereby turning on the air motor

for the shaftway door. Thus the door is opened. Contrasted with the organization of the patent in suit and its train of electrical and mechanical events, the selection and operation of the door to be operated are, in the defendant's installation, simple and direct. In its system there is no endless line (78) up and down the shaftway operated by its multiple obstructions at all doors as in the patent, nor is there a master means such as coil 38 of the patent, its connected walking beam and its suspended line 110 with a clutching system distributed over the whole shaftway, susceptible of operating doors at all floors and made operative at a particular floor by contact with a fixed car-carried cam in conjunction with toggles having detaching and attaching connections. The defendant employs a separate door operating power at each floor and causes operation of the door at each floor separately and directly by means of the projectable car-carried cam, thereby dispensing with the long and cumbersome obstruction of door operating and door clutching means over the whole shaftway. In other words, the defendant's action is direct from car cam to door air motor valve.

■ Although the claims may read literally on the defendant's installation, we are satisfied that its organization, not only in construction but in principle and operation, is wholly different from and therefore avoids infringement of the invention as disclosed by the specification of the patent in suit, under the law of Westinghouse v. Boyden Power Brake Company, supra. If, however, error should lurk in this finding then we come to another question which the plaintiff admits is present, namely; that if full and literal response to the claims and to their elements is found in the defendant's structure, there is still the question whether or not the prior art necessitates reading into the claims limitations such as will enable the defendant to escape infringement. This brings up the prior art on which the learned trial judge disposed of the case rather than on the law of Westinghouse v. Boyden Power Brake Company, supra. As we find ourselves in full accord with his discussion and application of the prior art to the patent in suit and to the scope of its claims, we shall, to avoid repetition, adopt his views as reflecting our judgment. 33 F.(2d) 148, 150, 151. We find the Norton patent not infringed.

Fear Patent No. 1,565,143, Issued December 8, 1925.

■ The object of this invention was to provide "gate-operating mechanism which will shorten the time spent after the car reaches the landing in operating the gates, and thereby cut down the time required for a round trip" and also to eliminate the temptation of the operator, in his anxiety to make better time, to open the gates prematurely and his inclination, in hastening on, to leave them open. Fear's invention is a claimed improvement on Norton and consists; (1) in adapting the system to compressed air or pneumatic door engines; and (2) applying the system to the double door arrangement, that is, shaftway door and car door. Again we refer to the opinion of the learned trial judge, this time for a full and detailed statement of Fear's invention, 33 F.(2d) 148, 151, 152, and for discussion of the claims in the light of the specification and of the art, to all of which we subscribe. We shall therefore discuss the invention in general terms, and briefly.

The Fear patent shows a separate air motor for each shaftway door (21), the motors being controlled by levers which project into the shaftway (26) as in Rowntree. The car doors are operated by a car-carried motor (22) as in Rowntree. Both shaftway door and car door motors are controlled by the same movable cam or shoe (28) seemingly everywhere used in one way or another. It appeared in Rowntree, Westlin and Phillips. This cam or shoe is adapted to be projected and retracted by a reversible rotary motor. The motor (34) and the corresponding magnet (39) are so arranged that they are normally deenergized and reenergized only after the car reaches a floor or landing, thus insuring against premature opening *before* reaching it and also providing an automatic opening *after* reaching it. The mechanism that serves to prevent premature door opening and to insure the opening of the car door and the shaftway door when the elevator arrives at the landing is coil 19 and its associate lever 66 operated only when the hoisting control has been turned off and operated in connection with the means for turning it off. Except for this mechanism the rest of the mechanism resembles Rowntree in some particulars and seems to be almost identical with Westlin in the use of a projecting and retracting cam to come in contact with a projecting bell crank lever or its equivalent.

The defendant, admittedly, has no arrangement, structural or functional, similar to coil 19 and lever 66 and would clearly escape infringement were it not that the plaintiff says that coil 19 and lever 66, though

appearing in the patent drawings and disclosed in the specification as parts of the invention, are not included in the claims. Without coil 19 and lever 66 it has been persuasively testified the Fear apparatus would be inoperative. However that may be, the inventor, in his specification, made this combination of elements, if not an indispensable part of his invention, certainly a distinctive part of it. If members 19 and 66 are not included in the claims, then the claims do not disclose the invention of the specification or an invention over the prior art. We rather think they are included in the claims in view of the inclination of the inventor to claim everything broadly, for instance,—"electro-magnetically controlled means brought into operation in the neutral position of said controller to move said cam into operative position." It seems that this "means" refers, at least in part, to coil 19 and its associated members, for the plaintiff said these members are brought into operation for a definite purpose as a result of moving the controller to neutral. The defendant is not using these parts of the invention. The plaintiff used them only twice in upwards of fifty installations. In confining its other members to what it found in the art the defendant has not infringed the Fear patent.

The decree dismissing the bill is affirmed.