## COMPLETE CALCULATOR CO. v. MONROE CALCULATING MACH. CO.

### No. 874.

District Court, D. Delaware.

Oct. 18, 1933.

George M. Dowe and H. Dorsey Spencer, both of New York City, and J. Rankin Davis, of Wilmington, Del., for plaintiff.

George F. Scull (of Gifford, Scull & Burgess), of New York City, and William G. Mahaffy, of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is the usual bill in equity charging Monroe Calculating Machine Company with infringement of United States letters patent No. 1,774,367 for a calculating machine, granted August 26, 1930, to the plaintiff, Complete Calculator Company, assignee of Hyman Golber. The defenses are: (1) Noninfringement, (2) invalidity, and (3) estoppel as to two claims.

The art relates to calculating machines and is more than a century old. The calculating machines here considered perform four fundamental arithmetical operations—addition, subtraction, multiplication, and division. In the development of the art two distinct types of calculating machines became well known. The oldest, known as the "one-way actuator" or "Thomas" type, is a machine in which the actuator always turns in the same direction. In the other type, the actuator turns in one direction for addition and in the

opposite direction for subtraction. This is called the "reversible rotary actuator" or "Baldwin" type. Plaintiff's machine is of the Thomas type. Defendant's machines are all of the Baldwin type.

We are mainly concerned with machines performing division mechanically by repeated subtraction of a divisor from a dividend starting subtraction at the left end of the dividend where the denomination is highest. After the dividend value of one denomination has become less than the value of the divisor by successive subtractions, there is a mechanical shift of the carriage bringing the divisor into subtractive relation to the next highest denomination in the dividend. Subtractions continue until the quotient is indicated upon a quotient counter. Multiplication can also be computed upon these machines.

The machines contain three principal elements, all of which are old. They are called: (1) "Totalizer" or "numeral wheels"; (2) "tens carry mechanism"; and (3) "actuator" or "addendor." The totalizer is substantially the same as the mileage counter of the speedometer in an automobile. It consists of a series of toothed wheels set side by side each carrying numbers from 0 to 9. The number of the wheels determines the "capacity" of the machine. If there are six wheels their largest total would be 999999, indicating the maximum capacity of the machine. When any numeral wheel of the totalizer in its rotation passes from 9 to 0, the carry mechanism will register 1 in the adjoining numeral wheel, thus registering 10 in the totalizer. The actuator is a rotary shaft located in front of the keyboard and below the carriage. When a key is depressed, gear teeth mounted upon the actuator are shifted into position to engage with a gear which meshes with a numeral wheel of the totalizer. For illustration: If the 5-key is depressed 5 teeth are positioned to engage with a gear which rotates the corresponding numeral wheel of the totalizer and 5 is set up in the totalizer. If the 3-key is then depressed, 3 teeth are positioned to engage with a gear which further rotates the numeral wheel of the totalizer and 3 is added in the totalizer making a total of 8.

Plaintiff is not a manufacturer. Its principal if not sole asset is the Golber patent. Only one machine has been built in accordance with that patent. It was produced in evidence. In 1915 Golber began to build his machine and completed it in 1920. Two or three men of means formed the plaintiff company and have paid upwards of $100,000 in developing the machine. In 1921 the Golber patent application was drafted and ready for filing. Some question as to title having arisen, the application was not filed in the Patent Office until 1923. The existence of the Golber machine was not made public until after the declaration of an interference in the Patent Office between Golber and six other inventors in August, 1928. The patent after seven years in the Patent Office issued August 26, 1930. This suit was brought May 8, 1931. Every claim in issue, except 123, was written into the Golber patent after the seven-party interference and after a full disclosure in an application by Chase, inventor of defendant's machines, was available to Golber's patent solicitor although the Golber application as filed contained 289 claims.

The defendant is an old and established manufacturer of calculating machines. It succeeded Frank Stephen Baldwin, who gave his name to the Baldwin type machine. In 1912 the defendant developed and marketed a calculating machine which became generally known as the 1912 Monroe. George C. Chase, an experienced engineer in this art, joined the defendant company in 1917. The company was then developing their Model K machine. It was perfected in 1920. It is hand-operated and has been continuously on the market since that time. A motor drive controlled by plus and minus bars added to the Model K produced defendant's Model KA machine. Model KAA has all the features of the KA machine and also full automatic division and automatic multiplication. Defendant's Model KAS is exactly like KAA with the automatic multiplication feature omitted. KA machines were first sold in January, 1923. Since that date many thousand machines of the above models have been sold throughout the United States. The development of the commercial art is due to Chase, and not to Golber.

In his specifications Golber states:

"My invention relates to calculating machines which both compute and print, and an object of my invention is to produce a structure which is compact, convenient and easy of operation, of relatively few parts, and which is capable of performing all of the usual arithmetical processes, together with totaling and sub-totaling. * * *

"Another feature resides in the provision of a handle separate from the operating bail for controlling the operations of multiplication and division, and for convenience called the muldiv handle.

"Another feature is the provision of means whereby the muldiv handle effects preliminary setting of the parts to perform either multiplication or division, and also acts as an operating mechanism for carrying out these processes.

"A further feature of the invention resides in the complete visibility of the various factors such as the set-up, total, divisor, dividend and quotient, with provisions for printing each factor."

Claims 123, 130, 164, 165, 166, 167, 168, 169, and 172 are in suit. They can be conveniently divided into three groups. The first comprises claims 166 and 167. Claim 166 reads: "166. In a calculating machine the combination with a carriage and a totalizer therein upon which a dividend may be set, of means for driving the totalizer to repeatedly subtract therefrom a number representing the divisor, mechanism for carrying from order to order in the totalizer, and means independent of the carriage movement brought into action when the highest wheel passes from zero to nine in an over-draft, to arrest the driving means, and means for releasing the arresting means by the driving means." Claim 167 is like 166 with the exception of the last element; that element in the latter claim being "and means for releasing the arresting means by a reverse movement of the driving means." Each of these claims is charged to be infringed by defendant's hand-operated machine with full cycle stop mechanism and by Monroe KA machine.

In the second group are placed claims 130, 164, 165, 168, 169, and 172, as well as claims 166 and 167. Claim 172 reads: "172. In a calculating machine, the combination with a totalizer upon which a dividend may be set and division performed by subtracting from and adding to the amount on the totalizer a number corresponding to the divisor; of driving means for the totalizer, shiftable connections for determining the direction of drive of the totalizer, means for setting said connections for subtraction and means controlled by a totalizer wheel in passing from zero to nine and operated by the driving means to set said connections for addition, and arrest the driving means." This group is charged to be infringed by the Monroe KAS machine.

Claim 123 constitutes the third group. It reads: "123. In a calculating machine, the combination with devices upon which a number may be set, of a totalizer movable step by step to change its denominational relation with respect to said setting up devices, means for performing multiplication or division including a muldiv lever, said lever acting to repeatedly add the number set up or to repeatedly subtract it from the totalizer, and means controlled by said lever for feeding the totalizer to the right in multiplication and to the left in division." This claim is charged to be infringed by Monroe KAA machine.

Golber was not a pioneer. He came into a crowded art. To determine his contribution, if any, it will be necessary to consider the art.

The Madas machine made in Switzerland was sold in this country in 1915. Like Golber, it is a hand-operated Thomas type machine, with totalizer, carriage, and actuator. In normal position the driving handle constituting the driving means is locked. Depression of the handle unlocks it so that it can be turned. By a continuous rotation of the handle the machine automatically first subtracts the divisor from the dividend until the remainder is reduced below zero by an over-draft. Automatic change gears are then shifted to drive the totalizer wheels in addition one turn to correct the overdraft. Then the carriage is automatically shifted to the next order and the change gears again shifted back automatically to subtraction. As soon as an overdraft occurs a program mechanism takes charge of the machine. If the operator then releases the down pressure on the handle and continues to turn it, the machine will not lock until after the corrective add turn has been made and the carriage shifted. Thereupon the handle moves automatically into locking position to arrest the driving means. If the operation is to be repeated, depression of the handle unlocks the machine and simultaneously sets the machine for subtraction. The program mechanism of the Madas machine is thrown into action by the overdraft which causes the highest order numeral wheel to change from 0 to 9. The Madas machine, unlike Golber, does not contemplate any locking of the machine at the completion of each quotient digit. In June, 1921, this Madas machine was rendered more automatic by addition of a motor.

The Mercedes hand-operated machine employing the mechanism of Hamann United States patent No. 1,011,617 is of the Thomas type and was sold in this country as early as June, 1915. It has a one-way actuator and a change lever so that the machine can be set for addition or subtraction by shift gears. While the machine operates according to the complimental method, this is immaterial, for we are not concerned with the train of mechanism employed. When a dividend and divisor are set up and the actuator is in sub-

tractive relation, the crank handle is turned until it locks. This is a signal to the operator to shift the change lever to the add position. The shifting of the change lever to addition causes the carriage to move one step to the left. The operation is repeated. To make this hand operated Mercedes machine automatic, a motor and necessary controlling mechanism were afterwards added. After a dividend and divisor are set up, the power is operative when the carriage is moved the appropriate distance to the right and released. The machine automatically computes the problem. When the carriage reaches the extreme left-hand position the power is inoperative. Subtraction in the highest order proceeds until excessive and then the overdraft is created. The overdraft through the left hand numeral wheel starts mechanism into operation which arrests the actuator and shifts the carriage to the left and starts addition. At the end of the corrective add turn the left-hand numeral wheel again starts mechanism into operation which arrests the actuator and shifts the carriage. The action of the left-hand numeral wheel in both the overdraft after subtraction and in the additive correction turn arrests the actuator and shifts the carriage.

The Friden-Marchant machine of the Baldwin or reversible actuator type was sold in this country before August, 1921. The handle is rotated in one direction for addition and in the opposite direction for subtraction. An overdraft throws in an automatic lock for the driving handle and signals the operator that the overdraft is to be corrected by one turn of the driving handle in addition which also releases the lock.

Originally, calculating machines were provided with a bell signal to warn the operator when there had been an overdraft, this signal being controlled from the totalizer wheel of the highest order in its passage from 0 to 9 in the overdraft. In the Austrian patent to Herzstark No. 58,715 of 1913, there is disclosed a substitute for the bell in the form of a positive stop for the driving crank, thrown in on an overdraft by the passage of the highest order numeral wheel from 0 to 9. This device is shown in the Herzstark patent on a Thomas type machine and functions to arrest the driving means as a signal to the operator to change the machine into addition, the next operation required. This device was in practical use and was lifted bodily by the Marchant Company in the making of the Friden-Marchant machine, above referred to, with such modifications as a mechanic would make in applying such a device to a different type of machine.

In addition to the machines embodying the prior art, reference should also be made to certain of the prior art patents.

Rechnitzer British patent No. 14,453 of 1905 and the corresponding Rechnitzer United States patent No. 1,292,513 disclose a full automatic dividing machine. It is motor driven. Like any Thomas type machine, the actuators turn in one direction only. The machine is started into automatic division by the moving of a handle. Gearing is provided so that when the totalizer wheels on the carriage are in one position addition will be performed, and when the carriage is moved a half step from that position subtraction will be performed. The motor drive of the Rechnitzer machine is divided between the carriage and the actuators. In doing automatic division, the overdraft mechanism at the end of the subtract cycle, by the movement of the highest order numeral wheel from 0 to 9, releases the carriage and locks the actuator while the carriage is shifting. As soon as the corrective add turn has been made, the changing of the highest order numeral wheel from 9 to 0 releases the carriage and locks the actuator. Part of the driving means including the actuator is arrested both at the end of the overdraft and also at the end of the corrective add turn.

Yadu United States patent No. 1,029,655, issued June 18, 1912, shows a calculating machine with a locking mechanism thereon to lock the driving means at the end of the overdraft as a signal to the operator that one corrective add turn should be made reversely, this lock being controlled by the passage of the numeral wheels from 0 to 9 on the overdraft. In division the carriage is automatically shifted to the left at the end of the corrective add turn, and in doing automatic multiplication the carriage is shifted to the right automatically at the end of the corrective subtract turn by the turning of a handle in each case.

The Bresslau German patent No. 275,908 of 1914, in connection with the Bresslau German patent No. 259,081 of 1913, discloses an automatic division mechanism to be applied to a calculating machine such as was commonly used at the date of the Bresslau patents. After the divisor and dividend have been set up respectively in the totalizer and the actuator, a division key is depressed to release the actuators and connect them to the driving shaft, whereupon subtraction is continued until an overdraft

through movement of the highest order numeral wheel from 0 to 9 throws into action a program mechanism which automatically shifts the gears to change the machine to addition and, at the completion of the corrective add turn, the division key is released to again lock the actuators and free them from the driving shaft, the change gears being automatically moved back to subtraction at the completion of each quotient digit, when the machine is locked.

Hansa German patent No. 278,547 of 1914, in connection with Hansa German patent No. 288,323 of 1915, shows a calculating machine in which automatic division can be performed, the overdraft through the change from 0 to 9 of the highest order numeral wheel bringing into operation mechanism which automatically shifts the machine to addition and then, on the completion of the corrective add stroke, shifts the totalizer carriage and changes the machine back to subtraction. The driving means is a pump handle making a complete reciprocation for each cycle of the actuators. There is no lock because the machine is fully automatic and there is no need to signal the operator at any time during the performance of a complete division calculation.

The Greier French patent No. 527,463, granted July 26, 1921, shows a calculating machine in which division may be performed automatically. It is electrically operated. In division the actuator is reversed through the reversal of a reversible motor by automatically operated switches. Such switches and the remaining mechanism are controlled by the overdraft through the change of position of the highest order numeral wheel from 0 to 9. This sets into action a program mechanism by which the actuator is not only reversed by the reversal of the motor, but is prevented from running too far in the subtraction direction by a stop thrown in and out at appropriate times and is prevented from running too far on the corrective add turn by a stop which is thrown in and then released automatically to permit the reversed motor to drive the actuator in subtraction for the next quotient digit.

Numerous patents of the prior art disclose means by which the totalizer carriage can be shifted to the right in multiplication and to the left in division. Baldwin United States patent No. 159,244 (1875); De Bojano French patent No. 138,912 (1880); Trinks German patent No. 194,968 (1908); Triumphator German patent No. 244,184 (1912); Yadu United States patent No. 1,-029,655 (1912); Turk German patent No. 300,860 (1917).

Near the close of the case plaintiff's expert Friden was asked: "Mr. Friden, before taking up the specific discussions of these various calculating devices and for the information of the court, will you summarize the contributions which Golber has made to the calculating machine art and which have been embodied in the machines of the defendant herein complained of?" The witness replied: "I have prepared a statement of the contributions of Golber to the calculating machine art and I should like to read it into the record. * * *

"Golber was the first to provide:

"1. An automatic dividing machine in which each quotient digit is obtained by successive subtractions, including an overdraft and a corrective addition in each denomination, and in which reversal of the driving means is necessary after each corrective addition to prevent the machine from continuing in multiplication,—characterized by: An automatic positive arrest of the parts, after the correct quotient figure has been obtained in each denomination, before reversal of the driving means.

"2. A calculating machine having reversely moving driving means for carrying out automatic division by successive subtractions, including an overdraft and a corrective addition in each denomination, and in which movement of the driving means in one direction is required to set the machine for subtraction and in which movement of the driving means in the other direction must be stopped at the end of the corrective addition to prevent the addendor (or actuator) from continuing in multiplication,—characterized by: An automatic positive arrest of the driving means before reversal and only after the correct quotient figure has been obtained for that denomination.

"3. An automatic dividing machine in which each quotient digit is obtained by successive subtractions, including an overdraft and a corrective addition in each denomination, and in which reversal of the driving means is necessary after each corrective addition to prevent the addendor (or actuator) from continuing in multiplication and to set the machine again for subtraction,—characterized by: An automatic positive arrest of the parts preparatory to reversal of the driving means after the corrective addition in each denomination, and the feeding of the

carriage only after the correct quotient figure for that denomination is shown.

"4. An automatic dividing machine in which each quotient digit is obtained by successive subtractions, including an overdraft and a corrective addition in each denomination, and in which reversal of the driving means is necessary after each corrective addition to prevent the addendor (or actuator) from continuing in multiplication and to set the machine again for subtraction,—characterized by: An automatic positive arrest of the parts preparatory to reversal of the driving means after the corrective addition in each denomination and a release of the arresting means and a resetting of the machine to subtraction as a mere incident of the reversed movement of the driving means.

"5. A calculating machine in which multiplication is carried out by repeated additions in successive denominations from right to left, and division is carried out by repeated subtractions in successive denominations from left to right, the totalizer carriage being fed to the right in multiplication and to the left in division,—characterized by: Carriage feeding means that automatically feed the totalizer carriage to the right when the machine is operated to perform automatic multiplication, and that automatically feed the carriage to the left when the machine is operated to perform automatic division, such automatic feeding taking place as a mere incident to the operation of the machine and without requiring any attention from the operator."

Obviously this is not a description of the Golber invention but is an artfully prepared statement covering what Friden considered the scope of the Golber claims, with an effort to avoid the prior art and at the same time to cover defendant's machines.

Another attempt is made to define the Golber invention in plaintiff's brief. It is there stated: "So much has been said in the record about arresting means that the Court may be led to think that this is the feature of the Golber invention on which infringement is solely predicated. Such is not the fact. Golber's contribution to the art lies in a combination of elements operating under a new law of coordination. The arresting means, of course, play an important role in the operations carried out under this new law of coordination." Plaintiff, however, wholly fails to point out what "new combination of elements" is disclosed and claimed in the Golber patent, or to define the "new law of coordination" invoked by such new combination of elements.

Finally, during the oral argument, the court inquired of counsel: "Were you approaching that new principle?" Counsel replied that he was, and said: "Now, it is our contention that Golber is the first to perform automatic division by repeated subtraction with the arrest of the driving means after the adding-in of the overdraft. You must perform division automatically in a manner utilizing that principle."

Apparently the plaintiff claims the machine of the patent in suit is made up of parts which, though old in the art, have been combined in a way to cooperate to produce new and useful results; and more specifically to effect certain calculations, particularly those relating to division, in a more efficient manner than had been brought about by any machine of the prior art. Plaintiff, however, seeks a broad construction of the claims in issue and contends that if the Monroe machines can be brought within the letter of these claims there is infringement. Conceding that the claims in suit may be read on the mechanism of the defendant's machines, it is now well settled that this is not enough to establish infringement. "It must be determined that the device of the defendant is not merely in words but in fact the invention of the patent." Elevator Supplies Co. v. Graham & Norton Co. 44 F.(2d) 354, 355 (C. C. A. 3); Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 568, 569, 18 S. Ct. 707, 42 L. Ed. 1136.

Without passing upon the validity of plaintiff's patent, do defendant's machines infringe? Plaintiff has built only one machine. It is in evidence. It is an extremely complicated and delicate mechanical structure. Whether it can be developed into a commercial machine is undetermined. Golber built upon a Thomas type machine. In that type the actuator turns in one direction only. The totalizer is reversible. A change from addition to subtraction is brought about by a shift gear changing the direction of rotation of the totalizer. Golber provided two types of driving or operating means. One, called a "bail," is a small bar extending immediately in front of the keyboard and on a level with it. It is similar to the space bar on a typewriting machine. It is used for problems in addition and subtrac-

tion. The function of the bar is to turn the actuator forward in addition or subtraction thereby entering the value set up by the keys into the totalizer. When the bar is depressed in problems of addition or subtraction, the actuator is caused to rotate only once.

For problems of multiplication and division Golber provides what he calls a "muldiv handle." This handle is separate from the operating bail. It will cause the actuator to rotate from 1 to 9 times. It serves both to set the machine for multiplication or division and to operate it after being so set. In division the dividend is set up in the totalizer and the divisor in the actuator. The totalizer is so positioned laterally that the wheel of highest denomination in the dividend is in alignment with the wheel of highest denomination in the divisor. The muldiv handle is pulled down. The repeated rotation of the actuator will repeatedly subtract the divisor from the dividend. When the number has been subtracted once too many times, an overdraft will be scored. Gears immediately shift the mechanism back to add and the divisor is added once in the dividend. The muldiv handle is also locked from further downward movement. This locking serves as a signal that the handle must now be lifted to its highest position. The carriage is fed one step to the left so that rotations of the actuator will subtract in denominations one lower than previously. The operation is continued until the unit wheel of the totalizer is aligned with the units set up on the actuator. When the muldiv handle becomes locked on its downward movement and raised to its highest position, division has been completed and the muldiv handle released.

In multiplication the number to be multiplied is set up in the actuator and then rotated a number of times corresponding to each digit of the multiplier. An index plate at the side of the machine reading from 0 to 9 serves as a guide to the operator for the purpose of determining the number of rotations.

In a problem of division the muldiv lever of the Golber machine is brought down from its highest position and the actuator rotates a definite number of times depending on the problem. When an overdraft occurs the machine is automatically changed from subtraction to addition, the overdraft is added in and the muldiv lever is arrested. There is a function for this arrest. It is a signal

for the operator to move his handle back to its original position. Defendant's machines are so radically different from Golber that it is difficult to find any relationship between the elements, the functions, or the modes of operation. Golber built upon the Thomas type. Monroe and Chase built upon the Baldwin type. Defendant's actuator is reversible. A change from addition to subtraction is brought about by reversal of the actuator. Defendant has only one type of driving means. Its machines have no shiftable connections by which the machine can be set for addition or subtraction. The kind of operation to be performed is determined solely by the direction in which the actuator is turned by a hand driven crank or motor. In 1921, defendant's hand-operating machine was improved by Chase by adding his full-cycle stop mechanism covered by his patent No. 1,544,806. When the handle comes to normal, rotation in one direction or the other will give addition or subtraction. Chase provided mechanism for stopping the handle both in oversubtraction and in overaddition. To make the machines fully automatic Chase incorporated an electric driving means covered by his patent No. 1,656,650. He provided a continuously running motor with a clutch between the motor and the machine. The motor can be de-clutched while it is running. To absorb the energy and bring the machine back to normal, Chase provided a series of springs. Reversal of the actuator for addition or multiplication and for subtraction or division is brought about by temporarily disconnecting the machine from the electric motor. There is no arrest or stop of the mechanism in any practical sense. Any arrest or stop is infinitesimal in duration and is merely incident to a movement springing in the opposite direction. Such a reversal does not embody the Golber arrest of the driving means. The theoretical pause in Chase does not act as a signal or lock the machine as in Golber. In defendant's automatic machines the shifting of the clutch lever at the end of the corrective add turn to drive the machine subtractively for the next quotient digit is preceded by a shifting of the carriage. The shifting of the carriage is caused by defendant's energy-absorbing devices which are thrown into operation at the end of the subtraction cycle and disconnect the motor from the machine, absorb the energy, reverse the machine into subtraction, and then shift the clutch lever.

From a consideration of the structure of the machines of the parties in the light of the prior art it is obvious there is no infringement, and it is not necessary to pass upon other defenses.

However, the defense of estoppel as to claims 166 and 167 deserves consideration. These claims were inserted in the amendment to the Golber application of May 27, 1930. The claims are alike, except the last element of claim 166 calls for release of the arresting means by the "driving means" in any manner, and claim 167 calls for such release by a "reverse movement" of the driving means. The mechanism of the KA machine was disclosed and patented by the defendant in application of Chase resulting in patents No. 1,544,806 and 1,566,650. Over three and one-half years after the issue of the first mentioned patent, and over three years after the issue of the second, and over six years after the KA machine had been marketed by the defendant, Golber filed a proposed amendment to his application, copying certain claims of the Chase patents. Interferences were declared. Chase moved to dissolve. In disposing of the motion in the case involving claims copied from No. 1,-551,806, the Law Examiner stated that "unless Golber claimed substantially the same invention before he made the claims constituting the issue and within two years from the patent date, he is estopped to make the claims," and held: "It appears, therefore, that Golber did not claim the invention of the counts before he copied Chase's claims and since no satisfactory reason appears to excuse Golber's delay of more than two years in copying the claims, they are unpatentable to Golber." In disposing of the motion to dissolve in the case involving the claim copied from patent No. 1,566,650, the Law Examiner came to the same conclusion. Golber did not appeal. In the face of these proceedings in the Patent Office, Golber cannot be heard to say that claims 166 and 167, couched in different language and procured by allowance of another official in the Patent Office, are broad enough to dominate defendant's machines. Webster Electric Co. v. Splitdorf E. Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792. Plaintiff is estopped to assert claims 166 and 167 against defendant's KA machine and machines like the KA machine embodying the invention of the above mentioned Chase patents.

The bill of complaint must be dismissed.