**BRITISH ACOUSTIC FILMS, Limited, v. ELECTRICAL RESEARCH PRODUCTS, Inc.**

**SAME v. RCA MFG. CO., Inc.**

**Nos. 1240, 1241.**

District Court, D. Delaware.
Sept. 22, 1939.

Samuel E. Darby, Jr. (of Darby & Darby), and Paul Kolisch, both of New

York City, and Hugh M. Morris, of Wilmington, Del., for plaintiff.

Merrell E. Clark, and Henry R. Ashton (of Fish, Richardson & Neave), both of New York City, and E. Ennalls Berl (of Ward & Gray), of Wilmington, Del., for defendant Electrical Research Products, Inc.

Stephen H. Philbin and John B. Cuningham (of Fish, Richardson & Neave), both of New York City, and Herbert L. Cohen, of Wilmington, Del., for defendant RCA Mfg. Co.

NIELDS, District Judge.

These two suits charge patent infringement of the same patents. They were tried together. For the purposes of these suits it is agreed that the apparatus of each defendant is substantially the same. The defenses are invalidity and non-infringement.

Plaintiff is British Acoustic Films, Limited, a British corporation. It is the owner of patent No. 1,597,819 for a "Device for Feeding Acoustic Films at Constant Speed", issued to Arnold Poulsen and Axel Carl George Petersen August 31, 1926 upon application filed July 9, 1924 (hereinafter referred to as the first patent), and patent No. 2,006,719 for "Constant-Speed Film-Feeding Mechanism", issued to Arnold Poulsen July 2, 1935, upon application filed August 19, 1931 (hereinafter referred to as the second patent). The claims in suit are 1 and 2 of the first patent and 1, 2 and 3 of the second patent.

Defendants are well known manufacturers of sound recording and reproducing apparatus. Defendant RCA manufactured the PS-24 reproducer. Defendant ERPI manufactured the TA-7400 reproducer. These are the devices charged to infringe.

The suits involve simple, elementary principles of mechanics. The patents relate to sound recording and sound reproducing apparatus of the film type. In general terms, they are concerned with mechanism for moving the film at a constant speed in front of the light. If the film has a fluctuating or variable speed at any point such fluctuation appears as a distortion of the original sound. In recording and reproducing machines, the point where the record is made or is reproduced, i. e., where the recording or reproducing beam of light impinges on the film, is called the translation point. The translation point may be provided in a film gate which frictionally engages the film, or on a drum, roller or sprocket over which the film passes.

Sounds are recorded on films by exposing a linear area of the film the length of which varies in accordance with sound amplitudes, or the intensity of which varies in accordance with sound amplitudes. The former method is usually referred to as variable area recording and the latter as variable density recording. Records produced by both methods are reproduced by a device in which a linear area of the record is exposed to light and the fluctuations in light caused by the record are translated into sounds. Sound recording and reproducing may be restated in simpler terms. In apparatus of the film type the sound is recorded on a film (1) by changing the music or voice air waves into movements of a diaphragm in a microphone, (2) by changing these movements into electrical currents, and (3) by changing the currents into variations of a light which are photographed on a film moving in front of the light. The film record is reproduced by reversing the process.

There are two distinct causes of irregularities in the movement of a sound film past the translation point. (1) The motor and gearing driving the sprocket cause low frequency disturbances. (2) The sprocket teeth engaging the film cause high frequency disturbances. If the film driving the flywheel is tight between the flywheel and the main driving sprocket it is incapable of acting as an elastic link, and can not take up the slight pulsations imparted to it by the sprocket. Although the introduction of a jockey roller provides some flexibility, sufficient for low frequency speed variations, it is not sufficient for filtering rapid pulsations in the movement of the film at the sprocket, because the effectiveness of the roller for this purpose would be impaired by the inertia of its mass and the resistance of the bearings.

Prior Art

Since the earliest days of engineering, flywheels have been used in many arts for securing substantially constant motion of a shaft or the like. It has been the universal practice in the phonograph and other arts to mount such flywheels on shafts the rotation of which one desired to control at a uniform rate. In the sound recording and reproducing art, prior to 1924, a practice existed to equip the rotary record support with a flywheel, or to use a rotary record

support which itself constituted a flywheel, for the purpose of improving the constancy of speed of the record past the translation point. Examples are found in Edison U. S. patent No. 227,679 of 1880 (cylindrical wax record), the French patent addition No. 10,377 of 1909 (disc wax record), and the following patents of Vogt et al. (linear film record): German patent No. 387,058 of 1923, application filed May 23, 1920 and French patent No. 549,196 of 1922. In sound recorders and reproducers using linear film records, prior to 1924, it was the practice to drive the flywheel equipped record support from a power through the record itself, held in frictional contact with the record support. It was so stated under oath by Poulsen and Petersen in their original application for the first patent in suit: "For regulation of the speed at which film is fed forward in cinematographic apparatuses and the like it has been proposed before, as it is well known to use a flywheel which is driven by a roller on which the film is running in such a manner that it turns the roller by friction." Examples of this arrangement are found in Fig. 1 of the German patent to Vogt et al. 387,058 of 1923 and in Fig. 2 of the French patent to Vogt et al. No. 549,196 of 1922. Film-driven drums which themselves have substantial mass, and therefore flywheel effect, are shown in the French patent to Braun 394,485 of 1908, and in the Swiss patent to Dragoumis 61,231 of 1912.

In the phonograph art it was known prior to 1924 to interpose an elastic coupling between the power source and the flywheel-equipped record support for the purpose of compensating irregularities of speed in the driving source. Examples of this are the Constable patent No. 1,425,177 of 1922 (cylindrical record), French patent addition No. 10,377 of 1909 (disc record), and French patent to Vogt et al. No. 549,196 of 1922 (film record).

The French patent to Vogt et al. discloses two different forms of elastic coupling between the power source and the flywheel-equipped record support. In Figs. 3 and 4, the elastic coupling, described in the specification, is in the form of a spring interposed on the mechanical connection between the driving motor and the shaft of the flywheel-equipped record support. In Fig. 2, the means for driving the flywheel-equipped record support include the motor, the main pulling sprocket and the span of film between that sprocket and the record support. The elastic coupling is provided by the pressure roller which is described as being under the action of a spring. This roller maintains a bight in the film and serves not only to hold the film against the roller but also "to compensate for irregularities of speed." This patent was published on February 3, 1923, prior to Poulsen's filing date of July 9, 1924. Fig 2 of the Vogt patent describes a film driven flywheel and shows a spring pressed roller "to compensate for irregularities in speed". Spring pressed rollers of the general character of the rollers of the French patent to Vogt, et al., termed jockey rollers, were well known in the motion picture art prior to 1924. Examples are disclosed in Merkel patent No. 1,075,487 of 1913 and the Maggard patent No. 1,308,293 of 1919.

## Patents in Suit

*The first Poulsen patent.* This patent is for a device to improve the speed constancy of sound records used in film phonographs. The only feature of the device asserted to be new was the spring pressed roller or "jockey roller". How new was the use of a jockey roller? In their application Poulsen and Petersen acknowledge that they did not originate the way in which the record support with its flywheel was driven. "It is well known", they said, "to use a flywheel which is driven by a roller on which the film is running in such a manner that it turns the roller by friction". Continuing they say: "The present invention has now for its object to provide a constant feeding speed of cinematographic and especially acoustic films by adding to the said known regulating mechanism [that is, the film-driven flywheel] an intermediate member, which is inserted between the driving mechanism and film-driven roller coupled to the flywheel, and which prevents that smaller temporary variations of the driving power and, thereby, of the speed of the driving mechanism are transmitted to the portion of the film running to the driven mechanism * * *."

This "intermediate member" is the spring pressed roller or jockey roller. It serves, they say, by operating in the way that jockey rollers have always acted when used as belt tighteners in the film phonograph art. When the speed of the driving mechanism increases temporarily, thereby tending to tighten the driving span of film, the jockey roller moves in the direction of the arrow in Fig 1 of the drawing of the patent, stretching the spring and permitting the film span to shorten "without any ap-

preciable variation of the tensile stress of the film". Conversely, when the speed of the driving mechanism decreases temporarily, tending to loosen and lengthen the driving span of film, the jockey roller moves in the opposite direction, under the action of the spring and keeps the film taut. This is the only way that this old and familiar tool can act or has ever acted. The effect of the jockey roller spring in thus compensating speed variations of the driving mechanism in devices of this kind, is sometimes referred to as a "spring-filtering" effect. It "filters out" variations in speed of the driving sprocket so that they do not reach the flywheel drum. It provides an "elastic link" in the drive of the flywheel drum.

The idea of employing a spring to provide an elastic link is old in the phonograph art. In cylinder and disc phonographs the spring forming an elastic link was introduced between the drive shaft for the record support and the record support itself. In the Constable patent, showing a cylinder phonograph, the elastic link is a U-shaped spring. A claim in the United States Vogt patent, directed to this elastic drive feature, was in issue in the case of Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005. The claim was held invalid in view of the disclosure of the Constable patent. The principle of operation of the spring-filters of these prior art devices is the same as the jockey roller of Poulsen. If the prior art went no further, the Poulsen patent would appear to be invalid.

However, the prior art went further. It discloses the very thing Poulsen seeks to cover by his first patent. This disclosure is contained in Fig. 2 of the French Vogt patent. Between the driving sprocket and the film drum to which the flywheel is attached Fig. 2 shows the spring pressed roller which is stated "to compensate for irregularities in speed". This roller is in exactly the same position as the Poulsen spring pressed roller and serves the same purpose. Fig. 2 of the Vogt structure is the very thing defined by the Poulsen claims and constitutes a complete anticipation of the first Poulsen patent. It shows that Poulsen was not the first to apply a spring pressed roller for this purpose to a film phonograph of the film-driven flywheel type.

Plaintiff denies that the flywheel of Vogt's Fig. 2 is film driven. It is film driven because: The patent says so; it was so decided in the Altoona case when Engl, one of the Tri-Ergon inventors, so testified; and in Svenska Zeiss v. Aga-Baltic case, the Stockholm City Court decided the Swedish Poulsen patent invalid because of the French Vogt patent. So it is clear that the flywheel roller is driven by the film.

In connection with the above, plaintiff relies upon the file wrapper of the Vogt United States patent. This application did not become available to the public until 1929 and could not affect what the French patent taught a man skilled in the art in 1923, or in 1924, when Poulsen filed his application. It is significant that the Swedish court, having before it this file wrapper, recently decided that Fig. 2 in the United States Vogt patent was film driven, and held it a complete anticipation of the Poulsen Swedish patent.

However, if the French Vogt patent did not disclose that the flywheel of Fig. 2 was film driven, its disclosure would invalidate the Poulsen claims for lack of invention. It is certain that the French Vogt patent discloses the exact form of intermediate member which Poulsen claims, i. e., a spring pressed roller bearing against the film. Also the Vogt patent states that it functions "to compensate for irregularities in speed" which is Poulsen's purpose. Even if Poulsen had been the first to apply the old spring pressed roller to the old film-driven flywheel he would not have made a patentable invention.

In a case relating to this particular art the question was whether Vogt had made a patentable invention in applying the flywheel to a new kind of phonograph. The Supreme Court said: "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S.Ct. 586, 78 L.Ed. 1131. The inclusion of a flywheel in any form of mechanism to secure uniformity of its motion has so long been standard procedure in the field of mechanics and machine design that the use of it in the manner claimed by the present patent involved no more than the skill of the calling. See American Road Machine Co. v. Pennock & Sharp Co., supra, 164 U.S. [26] 41, 17 S.Ct. 1 [41 L.Ed. 337]. * * * The patentees brought together old elements, in a mechanism involving no new

principle, to produce an old result, greater uniformity of motion. However skillfully this was done, and even though there was produced a machine of greater precision and a higher degree of motion constancy, and hence one more useful in the art, it was still the product of skill, not of invention." Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed 1005.

■ Poulsen and Petersen combined the old jockey roller or spring pressed roller of the prior art with the old film-driven flywheel, into a mechanism "involving no new principle, to produce an old result, greater uniformity of motion". That is a product of skill only, and not of invention.

This court finds the first Poulsen patent invalid because of anticipation and for want of invention.

Defendants' machines are charged to infringe the first Poulsen patent. They are improvements over the prior art, including Poulsen, in that they eliminate the high frequency sprocket-tooth disturbances (96 cycle flutter) resulting from the reaction between the teeth on the driving sprocket and the sprocket holes. The amount of these disturbances depends upon the condition of the film. As previously stated, they are distinct from the low frequency disturbances caused by irregularities of the speed of the pulling sprocket.

Plaintiff asserts that the device of the Poulsen patent eliminates these high frequency distortions. The Poulsen patent says nothing about sprocket tooth irregularities which are wholly distinct from low frequency irregularities of the driving mechanism. Only with disturbances of the latter character do the Poulsen specification and claims deal. Defendants' expert testified that the principle of operation of the Poulsen device made it incapable of eliminating sprocket tooth irregularities. This principle was the maintenance of a taut film. All agree that the Poulsen film is taut and the use of a spring roller pressing against the film is to keep it taut. The reason a device operating on this principle can not eliminate high frequency sprocket tooth irregularities is that the taut film can not absorb them and the spring pressed roller, on account of its inertia, is not capable of following the disturbances of that frequency. The jockey roller is so heavy, relatively, that it can not be moved by such small forces of high frequency.

There was no testimony as to what the Poulsen machines actually built accomplished in that direction. Poulsen, the patentee, testified for plaintiff, but was silent on this matter. The fact that Poulsen machines had been used in substantial quantities abroad is no criterion. Thousands of machines with sprocket tooth flutter were put into successful commercial use by one of the defendants between 1926 and 1936 and many of them are still in daily use in theatres.

Defendants' machines eliminate high frequency sprocket tooth fluctuations because they do not employ the taut film and the spring pressed roller. Defendants' machines operate upon the loose film principle without jockey roller or other intermediate member. The driving span between the main pulley sprocket and the film drum must be loose, not taut. Because the film is maintained in a loose or slack condition and is not encumbered by an intermediate member pressing against it, it is able to absorb high frequency fluctuations.

To secure film looseness defendants avoided film gates and other devices that put a drag on the film. They mounted all parts to be driven by the film on ball bearings to eliminate friction. Instead of a flywheel they adopted a "rotary stabilizer" having a light outer casing fixed to the shaft of the bearings, a heavy damping wheel mounted loosely on ball bearings upon the shaft and located within the casing, and oil filling the space within the casir · not occupied by the damping wheel. This device minimizes speed fluctuations lik flywheel but does it in a different ..ay. A flywheel stores and restores energy and makes a system oscillate unless braked. The rotary stabilizer dissipates energy involved in disturbances in the form of heat, developed by friction within the oil; and thus avoids oscillation. The result is a free-running, non-oscillating, loose-filmed system. Thus defendants' machines eliminate high frequency sprocket tooth irregularities and reach the goal Poulsen sought but never reached. It is certain that Poulsen's patent made no contribution to the art that entitles the patentees to have their claims expanded to cover defendants' machines.

■ Even if Poulsen's claims 1 and 2 could be read upon PS–24 machine infringement would not follow. It must be determined that the device of the defendant is

not merely in words but in fact the invention of the patent. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136; Elevator Supplies Co. v. Graham & Norton Co., 3 Cir., 44 F.2d 354. Complete Calculator Co. v. Monroe Calculating Mach. Co., D.C., 4 F.Supp. 842, 847. It is equally certain the PS–24 machine does not embody the Poulsen invention.

Further, the Poulsen claims construed in the light of the Poulsen disclosure, can not be read upon defendants' structure. Poulsen requires a flywheel in his combination. He requires "means to compensate variations in the motion of the film due to irregularities in the rotary motion of the feeding roller". These means in the light of the specification refer to an intermediate member or jockey roller. The original claims were confined to such member. The specification, while stating that this intermediate member which rests "resiliently against the film" may be a "loop, arm or other suitable member * * * doing the same service as the roller", nowhere intimates that the results sought could be obtained without the use of such an intermediate member resting resiliently against the film. Defendants' machines have no such means and therefore do not infringe the Poulsen claims.

*The second Poulsen patent.* This patent was applied for seven years after the application for the first patent. In substance it states that the first patent did not provide adequate damping means for the oscillatory system disclosed. It asserts that the frictional resistance between the film and the film gate helped in this respect but "In practice, * * * this compensation is very incomplete, because the said friction effect, due to the presence of dust, etc., in the gate, is not uniform even if the speed of the film is constant". The remedy proposed is to do away with the objectionable film gate of the first Poulsen patent and to use a system "in which the motion of the film is constantly counteracted by a brake and according to the invention the retarding effect produced by the said brake is utilized for the purpose of suppressing periodic vibrations of the fly-wheel and the portion of the film travelling towards the point of illumination without the utilization for the said purpose of any friction in a sound gate".

This patent is merely for the use of a constantly acting brake in a system without a film gate to dampen oscillations. Of course, the constantly acting brake maintains the film taut, like the film gate and bearing friction in the first patent. This little step was not new in 1931. Three years earlier, Kellogg, an eminent engineer, filed an application which was a precursor of the PS–24 machine. It showed means for maintaining a loose film while providing the necessary damping. These means included a magnetic or "eddy-current brake" for providing the desired damping, an "eddy-current brake" being one of the kinds of brake suggested in the Poulsen patent three years later. In order that the film may be maintained loose with this damping brake, provision is made by Kellogg for rotating the magnet part of the brake at approximately the speed of its armature which is connected to the flywheel. As a result, the brake acts as a damper only when its services are required by irregularities in the film motion. At other times the film is not continuously retarded by it. Kellogg stated that if you were willing to put up with a tensioned film you could hold the magnet stationary so that there would be a constantly acting brake and consequently "a steady retarding force" on the film.

The Kellogg patent constitutes a complete anticipation of Poulsen's second patent. It is just as true of Kellogg as of Poulsen that hunting is eliminated by applying a brake to the flywheel shaft.

On the issue of non-infringement little need be said. The only advance claimed for Poulsen's second patent is the substitution of a brake for a film gate as a constantly acting damping resistance. If it were new there would be no infringement. A brake of this character is exactly what defendants' machine does not have. It is because it has no such brake that it is able to maintain its loose film which is responsible for the improved results.

The Poulsen second patent is invalid and not infringed.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The bill of complaint in each case must be dismissed.