## BRITISH ACOUSTIC FILMS, LIMITED, v. ELECTRICAL RESEARCH PRODUCTS, Inc.

### SAME v. R. C. A. MFG. CO., Inc.

### Nos. 7309, 7310.

Circuit Court of Appeals, Third Circuit.

June 27, 1940.

Hugh M. Morris, of Wilmington, Del. (Samuel E. Darby, Jr., and Paul Kolisch, both of New York City, of counsel), for appellant.

Stephen H. Philbin and John B. Cuningham, both of New York City, and Herbert L. Cohen, of Wilmington, Del., for defendant RCA Mfg. Co.

Merrell E. Clark, Henry R. Ashton, and Edmund J. Driscoll, all of New York City, and E. Ennalls Berl, of Wilmington, Del., for appellee Electrical Research Products, Inc.

Before BIGGS, MARIS and CLARK, Circuit Judges.

MARIS, Circuit Judge.

These cases involve the validity of claims 1 and 2 of the Poulsen and Peterson patent No. 1,597,819 issued August 31, 1926, and claims 1, 2 and 3 of the Poulsen patent No. 2,006,719 issued July 2, 1935. They will be referred to herein as the first and second Poulsen patents. Subsidiary ques-

tions of infringement, if the patents are valid, are also involved. In separate suits by the plaintiff, the present owner of the patents, against the two defendants, alleged to be infringers, the District Court for the District of Delaware found the claims in suit to be invalid and not infringed. 29 F.Supp. 531. The plaintiff then took the present appeals.

The two patents here involved are in the sound motion picture art. In sound recording apparatus of the film type, sound waves actuate the diaphragm of a microphone to produce electric currents which cause a light to vary correspondingly, the light shining in a narrow line at the "translation point" on a film passing before it to photograph on it the light variations. The sound waves, and the corresponding movements of the diaphragm, electric currents, and light variations all have the same frequencies. These frequencies exactly correspond to the variations recorded on the sensitized material of the film if the latter passes the translation point at constant speed. Reproducing is the reverse of recording. The sound film is moved before a light which, shining through the film at the translation point, is caused to vary in accordance with the variations recorded on the film, the varying light falling upon a photo-electric cell which changes the light variations back into electric currents, which in turn actuate the diaphragm of a loud speaker to produce sound waves in the air.

It is most desirable that the film should move at a constant speed before the light at the translation point, in either recording or transmitting. Otherwise, if the film has variations of speed, such variations will be combined with the recorded variations and the original sounds will be correspondingly distorted. The two Poulsen patents with which we are here dealing disclose apparatus intended to keep a sound picture film running smoothly, either when the original sound is photographed on the film or when the sound is reproduced from the film. In the first Poulsen patent, the apparatus includes a heavy flywheel, a sound gate (in which is located the translation point) and a spring tension roller (which maintains the film taut). The second Poulsen patent substitutes a brake for the braking effect of the sound gate.

The original sworn application for the first Poulsen patent, filed July 9, 1924, stated that "For regulation of the speed at which film is fed forward in cinematographic apparatuses and the like, it has been proposed before, as it is well known, to use a flywheel which is driven by a roller on which the film is running," and that the invention had "for its object to provide a constant feeding speed of cinematographic and especially acoustic films by adding to the said known regulating mechanism an intermediate member, which is inserted between the driving mechanism and film driven roller coupled to the flywheel, and which prevents that smaller temporary variations of the driving power and, thereby, of the speed of the driving mechanism, are transmitted to the portion of the film running to the driven mechanism." It is clear that the novel feature here described was the "intermediate member", the spring tension roller, or "jockey roller".

On December 9, 1924, the examiner disallowed the three claims of this application and on October 1, 1925 the applicants filed certain amendments to the specification and claims not affecting in substance the portions of the original specification quoted above. The claims were again rejected, as amended, on December 28, 1925, the examiner making the significant comment as to the two claims which formed the basis for the claims here in controversy that "Tensioning rollers can be placed wherever desired without invention." Thereafter on February 18, 1926, the applicants filed further extensive amendments to the specification and the claims by which, without any explanation or suggestion of mistake, they struck out the statement in the specification that "it has been proposed before as it is well known, to use a flywheel which is driven by a roller on which the film is running," substituting the statement that "it has been proposed before, as is well known, to use a flywheel which drives a roller on which the film is running", and eliminated all reference to "the said well known regulating mechanism", that is, the film driven flywheel. Upon this amendment the claims in suit were allowed June 26, 1926, and the patent issued.

Claim 1 of the patent, which claim is typical, calls for "A constant-speed film feeding mechanism, comprising a feeding roller; means for continuously rotating the same; a flywheel; a roller coupled to the flywheel and driven by the passage of the film thereover; and means to com-

pensate variations in the motion of the film due to irregularities in the rotary motion of the feeding roller." The plaintiff now contends that the novel features of this combination are the film driven flywheel and the means to compensate variations in film motion, namely the jockey roller.

As we have seen, the applicants in their original application stated under oath that the proposal to employ a film driven flywheel was well known in the art and that their invention consisted in adding the jockey roller to the combination. This statement by the inventors clearly was admissible in evidence against the plaintiff, their successor in title. Steward v. American Lava Co., 215 U.S. 161, 30 S.Ct. 46, 54 L.Ed. 139; Lake v. Moots, 215 Iowa 126, 244 N.W. 693. While the statement was ultimately amended out of the specification by the applicants, the amendment was not accompanied by any explanation or suggestion that the original statement was erroneous. Its evidential value was not impeached and it supports the finding of the district court that the film driven flywheel was not novel. That finding is further supported by the evidence of the state of the prior art, especially the French patent to Vogt et al. No. 549,196, which in its Figure 2 discloses a film driven flywheel.

The French Vogt patent also clearly discloses the use of a spring tension or jockey roller, the novel feature originally claimed by the applicants, in the same way that it is used in the first Poulsen patent. The function of this roller was to form a taut loop in the film, to exert on it "a resilient pressure", thereby taking up and suppressing the irregularities in the movement of the film imparted by variations in the speed of the driving mechanism. The spring tension roller is a well-known expedient very widely used in many mechanical fields. We agree with the Patent Office examiner who at first rejected these claims that its use in this combination did not require inventive genius. We find no error in the conclusion of the district court that claims 1 and 2 of the first Poulsen patent are invalid for want of invention

and because they were anticipated by the prior art.

Our conclusion makes unnecessary an extended discussion of the question of infringement. The district court held that these claims, even if valid, were not infringed by the defendants' devices. We agree. The defendants do not employ the jockey roller or the taut film. On the contrary they provide a free loop of film between the pulling means and the roller or drum over which the film passes. By this means it is possible to take up not only the irregularities of motion imparted by the driving mechanism, but also the very much higher frequency disturbances known in the art as "sprocket tooth flutter". The district court correctly found that sprocket tooth flutter could not be eliminated by the use of the taut film and jockey roller of the first Poulsen patent. The defendants' success was due to their abandonment of this principal element of the Poulsen claims.

It was found that the braking effect upon the film of the film gate as employed in the mechanism of the first Poulsen patent was not uniform and, therefore, not satisfactory. The second Poulsen patent accordingly proposed to substitute a braking device consisting of an ordinary friction brake, a rotary air or oil brake or an eddy current brake, which operates on the roller or drum over which the film passes. The purpose of this was to supply a steady retarding force and also the necessary damping force to prevent periodic vibrations or oscillation of the flywheel. We can see no invention in this obvious use of that universally known expedient, the brake. Furthermore its use in this combination was clearly anticipated by the Kellogg patent No. 1,892,554. The district court committed no error in holding claims 1, 2 and 3 of the second Poulsen patent invalid.

We deem it unnecessary to discuss the question of infringement of this patent other than to say that we think the district court properly held that the defendants do not employ a brake of the character disclosed in the patent.

The judgments of the district court are affirmed.